IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

SUSAN Y. PARSONS                                                                    PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:18-CV-223-MPM-RP

UNUM LIFE INSURANCE COMPANY OF
AMERICA, UNUM GROUP and JOHN DOES 1-50                           DEFENDANTS

## ORDER

This cause comes before the court on the motion of defendants UNUM Life Insurance Company of America ("UNUM"), *et al*, for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Susan Parsons has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This ERISA insurance case presents the issue of whether a decedent's death was accidental so as to entitle his widow to recover $50,000 in accidental death benefits from the UNUM life insurance policy she purchased from her employer. The decedent in this case is Mr. William Parsons, and his widow, Susan Y. Parsons, is the plaintiff in this action. This case arises from a April 27, 2017 incident in which Parsons was killed after he lost consciousness at the wheel of his tractor, fell off, and was then run over by it. The Incident Report produced by the Marshall County Sheriff's Department ("the Sheriff") summarizes the circumstances of Parsons' death as follows:

> On Saturday, April 29 , 2017, at 16:02 hours, I, Deputy Mark Kaply, responded to an E-911 dispatched radio call of a male possibly not breathing at 4572 Highway 178 East. MedStat and a Potts Camp Firefighter were on the scene when I arrived performing CPR. * * * MedStat advised that Mr. William Parsons was found unresponsive on a tractor in the yard of the residence by his daughter, Mrs. Scarlett Hart. He showed no cardiac activity before, during or after CPR, etc. ME-1 was notified and

1

> arrived on the scene. Mrs. Hart said that her father was on the tractor cutting the grass with a bush hog attachment. When she went outside to check on him at about 3:50 PM today, he was sitting on the seat of the tractor in the yard near the green boat. He was slumped over the steering wheel and was unresponsive. The tractor was running. She said that when she raised him up and called to him to try to get him to respond to her he fell from the tractor. The tractor then moved forward hitting her left leg and running over Mr. Parsons causing some cuts to his arm and head. The tractor continued down a hill and stopped in some brush. She said that Mr. Parsons' head and upper chest was blue and that he did not appear to be breathing when she raised him up on the seat of the tractor before he fell to the ground.

[Doc. 18-3 at 46-47].

Following her husband's death, plaintiff sought $50,000 in accidental death benefits from UNUM. In concluding that such benefits were unavailable, defendant applied a policy exclusion for deaths in which a non-accidental medical event was a contributing factor. Defendant determined that, in light of evidence that Parsons was already non-responsive at the wheel of the tractor before he fell off it, he had, in fact, sustained a medical event which contributed to his death. Defendant accordingly denied the $50,000 in accidental death benefits sought by Susan, and, feeling aggrieved, she filed the instant lawsuit in this court. Defendant has presently moved for summary judgment, arguing that no genuine issue of fact exists regarding its liability in this case and that it is entitled to judgment as a matter of law.

While this case comes before this court in the context of a motion for summary judgment, it seems clear that the procedural posture here is quite different from the typical such motion. Indeed, as an appeal of defendant's decision to deny accidental death benefits, this court is limited to the record which was before the ERISA administrator in this case. *See Vega v. National Life Ins. Co.*, 188 F.3d 287, 299 (5th Cir. 1999)(en banc)( "[a] long line of Fifth Circuit cases stands for the proposition that, when assessing factual questions, the district court is

constrained to the evidence before the plan administrator.")[1] That being the case, even though this court believes that the factual record here is rather limited in some respects, it is simply not an option to deny summary judgment based upon the prospect that new evidence might be developed at trial.[2] This court is essentially acting as an appellate court in this case, and the proof which is presently in the record is all the proof which will ever exist in this action.

In light of the foregoing, this court must simply assess that proof and determine, under a *de novo* review of the facts, whether defendant correctly determined that accidental death benefits were unavailable in this case. Although some aspects of the proof in this case are not as clear as this court might prefer, it does seem clear that the relevant UNUM policy provisions and Fifth Circuit precedent interpreting similar provisions are strongly in favor of defendant. This is, ultimately, the deciding factor in this case. In its summary judgment brief, defendant emphasizes that its policy defines "accidental bodily injury" as "bodily injury that is the direct result of an accident and not related to any other cause." Moreover, the policy contains an exclusion which provides that:

> Your plan does not cover any accidental losses caused by, contributed to by, or resulting from disease of the body or diagnostic, medical or surgical treatment or mental disorder as set forth in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders.

[Doc. 18-1 at 61]. This policy language strikes this court as being quite favorable to UNUM's position in this case, and defendant correctly argues that there is a considerable amount of Fifth Circuit precedent which supports its decision not to award plaintiff accidental death benefits.

In *Sekel v. Aetna Life Ins. Co.*, 704 F.2d 1335, 1337 (5th Cir. 1983), for example, the Fifth Circuit considered a case which, like this one, involved a death which appeared to have

---

[1] *Vega* was overruled on other grounds by *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 171 L. Ed. 2d 299 (2008), but it remains valid for the point cited above.
[2] This case is presently set for a non-jury trial in January.

elements of both a natural and accidental death. In *Sekel*, the insured fell to the floor at his home, sustaining a severe blow to his head, which resulted in his death approximately an hour later. *Sekel*, 704 F.2d at 1336. An autopsy revealed that severe atherosclerotic and hypertensive cardiovascular disease had probably caused his fall. *Id.* The district court awarded benefits to the plaintiff under his accidental death policy, finding that the mere fact that the insured's hypertension may have caused him to pass out did not mean that the medical condition caused his death. *Id.*

The Fifth Circuit in *Sekel* reversed, noting that the decedent's policy had an exclusion which denied "coverage for accidental death benefits respecting 'any loss resulting from any injury caused or contributed to by, or as a consequence of, any of the ... excluded risks, even though the proximate or precipitating cause of loss is accidental bodily injury.'" *Id.* at 1337. Similar to the accidental death provision in this case, one of the excluded risks in *Sekel* was "disease." *Id.* Based on these facts, the Fifth Circuit concluded that the district court erred in awarding the plaintiff benefits, writing that:

> We now examine the words of the Aetna policy to determine how these principles apply. The exclusion clause in this policy denies coverage for accidental death benefits respecting "any loss resulting from any injury caused or contributed to by, or as a consequence of, any of the ... excluded risks, even though the proximate or precipitating cause of loss is accidental bodily injury." This language contemplates a situation where "*the* proximate or precipitating cause of loss" is accidental bodily injury, and makes clear that, "*even though*" the accidental injury is *the* proximate or precipitating cause, if disease or bodily infirmity is also a contributing factor or cause, there is no coverage. Since the exclusion clause by its terms is applicable when *the* proximate or precipitating cause of loss is an accidental injury, necessarily implicit in its meaning is that other contributing factors or causes which the policy excludes (*e.g.,* "bodily or mental infirmity" or "disease") need not be concurrent proximate or as immediately precipitating causes for the exclusion to have effect.

*Id.* at 1337–38. *Sekel* is hardly an outlier in the Fifth Circuit's jurisprudence; defendant notes that there are several decisions reaching similar results. *See, e.g. Southern Farm Bureau Life Ins.*

4

*Co. v. Moore,* 993 F.2d 98, 103-04 (5th Cir. 1993); *Hagen v. Aetna Ins. Co.,* 808 F.3d 1022, 1030 (5th Cir. 2015).

In light of the foregoing, this court must decide whether Parson's death was "the direct result of an accident and not related to any other cause" or whether it is, instead, one in which a disease of the body was at least a "contribut[ing]" factor. In considering this issue, this court notes at the outset that plaintiff concedes in her complaint that "[w]hile Mr. Parsons may have suffered a medical event prior to the accident, but for Mr. Parson's daughter, Ms. Hart, attempting to assist her father, he would not have fallen off of the tractor or been run over by it." [Complaint at 2]. Plaintiff follows this (seemingly significant) concession with an assertion that "[t]he blunt force trauma to his body resulting from the tractor running over him, clearly an accident, was the actual cause of his death." [*Id.*] The problem with this assertion is that the policy in this case does not provide accidental death benefits in every case in which an accident was the "actual cause of death." To the contrary, the policy provides for benefits only in cases involving deaths which are "the direct result of an accident **and not related to any other cause**." (emphasis added). Moreover, *Sekel* makes it clear that insurance companies are entitled to enforce such policy provisions according to their terms.

In the court's view, there is no serious doubt that Parsons was unconscious at the wheel of his tractor as the result of a medical event of some sort. In so stating, this court relies primarily not upon after-the-fact investigations by the Sheriff or Coroner but rather a common-sensical interpretation of the statement of plaintiff's daughter, Mrs. Hart. In her sworn statement, Hart provides the following description of her father's condition when she found him:

> On Saturday April 29, 2017 I went outside to check on my dad like I always do when he is cutting grass to see if he needed any water or anything. I could hear the tractor but could not see my dad as my 6 month old son and I approached the tractor I could see my dad slumped over. I was rushing to lift him up to assess him to see what was wrong. I

5

was only able to get him to my chest height when his foot slipped off the clutch of the tractor and the tractor started to move forward at a very strong speed. I tried to stop the tractor by holding my weight against the tire and I tried to pick my dad up off the tractor but was unable to because the tractor is so big the top of the tire comes up to my neck. My son was standing about 10 feet from us and was screaming "mommy" "mommy" "mommy" and I had to let my dad go before the tire ran me completely over. When I let him go I fell to the ground and the tractor partially ran over my legs and feet. As I tried to get up my dad was still on the tractor and as it was going down the hill he fell off and rolled off and rolled underneath the tractor and underneath the back left tractor tire and the finishing mower.

[Doc. 18-3].

Based upon his daughter's sworn statement, this court can discern no serious dispute that, as he was slumped over the wheel of his tractor, Mr. Parsons was experiencing a serious medical event of some sort. Indeed, the only scenario which this court can imagine which does not involve a medical event is one in which Parsons fell asleep at the wheel of his tractor. However, plaintiff did not allege during the administrative process that her husband had fallen asleep, nor does she so contend now. In her statement, Hart indicated that her father remained non-responsive at his tractor even after 1) she had shaken him, 2) tried to lift him, 3) after her son had screamed "mommy" multiple times, and 4) after she herself had fallen from the tractor. Simply stated, this court is unable to imagine a scenario consistent with these facts which does not involve a medical event of some sort. Moreover, while the exact nature of that medical event is unclear, the policy in this case does not require that a precise medical diagnosis have been made.

In her brief, plaintiff attempts to distinguish *Vega* by noting that, unlike in that case, no autopsy was performed here.[3] For its part, however, this court does not believe that an exact medical cause of death was needed in order for defendant to reasonably conclude that a medical

---

[3] This court notes parenthetically that Parson's family would presumably been in a much better position to order an autopsy, and thus clarify these issues, than defendant would have been. It therefore strikes this court as being somewhat unfair to hold factual uncertainties in this regard against defendant.

event was a contributing factor in Parson's death. Indeed, this court regards Hart's statement as being an unusually reliable source of information relating to the crucial moments in this case. While an autopsy is a helpful source of information in a case of this nature, there are certain circumstances which are so clearly suggestive of a medical event that no after-the-fact medical investigation is required. In the court's view, this case presents precisely such a set of circumstances.

Hart's statement provides what this court regards as the crucial evidence in this case, and, that being the case, it is somewhat reluctant to even discuss plaintiff's arguments relating to alleged uncertainties and inconsistencies in other parts of the record. Indeed, it strikes this court that these are largely red herrings which serve to distract from the truly important evidence in this case. For example, in attempting to cast doubt upon the denial of benefits, plaintiff seizes upon one factual issue, namely whether her husband turned blue before or after falling from the tractor. In particular, plaintiff alleges in her complaint that:

> 11. Defendants based this denial of death benefits on a sheriff's report that stated Mr. Parsons had already turned blue and was not breathing when Ms. Hart found him. This mistake was contradicted in information provided to Defendants by Plaintiff in her appeal, including the sworn written statements of Ms. Hart that her father began turning blue AFTER he was run over by the tractor. Defendants allege in their appeal denial that Plaintiff made no allegation that said sheriff's report was incorrect, when in fact Mrs. Parsons did state in her appeal letter that the allegation that Mr. Parsons was found on the tractor cyanotic was untrue. She further stated that her husband did not start turning blue until after the tractor ran over him. Furthermore, Ms. Hart's sworn written statements submitted by Plaintiff on appeal unequivocally challenged the veracity of the sheriff's statement.

[Complaint at 3]. Plaintiff thus denies that her husband was "cyanotic" (i.e. had turned blue) when Hart found him non-responsive on his tractor, but this court does not regard this fact as being of any real importance in this case. It seems clear to this court that Parsons suffered a

significant medical event in this case, and it does not believe that the issue of whether that event caused him to turn blue before or after falling from the tractor is a material one.

In the court's view, the crucial legal factor in this case is that the policy at issue does not exclude recovery merely in cases where a non-covered medical event was the "actual" cause of death, to the contrary, it excludes recovery in cases where the event "contributed" to or was "related to" to death. In the court's view, if Parsons had not suffered a medical event of some sort, then his daughter would not have climbed on his tractor to aid him, and, in all likelihood, he would still be alive today. Plaintiff comes close to conceding as much in her complaint. This court therefore regards Parson's medical event as being a "but for" cause of his death, which constitutes an even higher level of causal connection than that required by the policy language in this case. That being the case, this court assigns no particular importance to the issue of whether Parsons had turned blue while he was still on his tractor or not. Indeed, this court notes that there are many serious medical emergencies, including heart attacks and strokes, which do not necessarily involve a person turning blue.

As noted previously, plaintiff herself alleges in her complaint, that "but for Mr. Parson's daughter, Ms. Hart, attempting to assist her father, he would not have fallen off of the tractor or been run over by it." [Complaint at 2]. Thus, even under plaintiff's version of the facts, this court can discern no reasonable argument that Parson's medical event did not at least "contribute" or "relate to" his death. Despite plaintiff's attempts to do so, Hart's decision to climb on the tractor cannot be separated, in a causation sense, from the apparent medical event which caused her to take this action in the first place. Thus, this court concludes that Parson's medical event must be regarded as "contributing" to or "related to" his ultimate death, and

accidental death benefits are therefore unavailable under the policy language and the Fifth Circuit's decision in *Sekel.*

Similarly unpersuasive are plaintiff's attempts to cast doubt upon defendant's denial of benefits by citing alleged inconsistencies in the Coroner's death certificate. In her brief, plaintiff notes that the death certificate lists the cause of death as being an "accident" but that it also cites certain medical factors as contributing to it. Specifically, plaintiff writes that:

> [U]nder 32(a), it is specified that the cause of death was by **accident**, and under 32d, the description was the "subject fail (sic) off the tractor going down a hill. Specifically, he states this as being an accident, while at the same time, listing in part 26 cause of death being blunt force trauma to the body, and then listing diabetes, hypertension, heart disease as leading to the immediate cause.

[Plaintiff's brief at 3]. The death certificate strikes this court as being consistent with defendant's denial of benefits, since it lists medical factors as contributing to the death. Nevertheless, this court does not regard either the Sheriff's report or the death certificate as being the crucial evidence in this case, regardless of what is contained in those documents. Indeed, given that no autopsy was performed (due to no fault of defendant), neither the Sheriff nor the Coroner were in a position to know exactly what was going on inside Mr. Parson's body at the time he fell from his tractor. While it should be noted for the record that both the Sheriff's report and the death certificate contain information which is helpful for defendant, this court does not believe that those documents constitute the truly important proof in this case.

In the absence of an autopsy, by far the most reliable evidence of what led to Parson's death is, as stated previously, the sworn statement of his daughter. That being the case, this court believes that, instead of merely submitting detailed analyses of Sheriff's and Coroner's reports which are based on limited information, it is incumbent upon plaintiff to at least offer a coherent *theory* as to what *other* than a medical condition might have caused Parsons to exhibit the

9

symptoms which his daughter witnessed. Plaintiff has failed to do so. Indeed, the closest plaintiff comes to even addressing this issue is her statement in her brief that "[i]t would be just speculation as to why Mr. Parsons was slumped over the running tractor." [Brief at 10]. This court disagrees. While it would be speculative to argue about whether, say, a heart attack or a diabetes-related drop in blood sugar caused Parsons to lose consciousness, this does not mean that this court is unable to make more generalized conclusions regarding his death.

In her brief, plaintiff concedes that Mr. Parsons had diabetes, for which he took daily medication, and that he had two stainless steel valves in his heart. [Brief at 9]. While these facts might be regarded as supporting the claims decision in this case, this court will refrain from speculating regarding the exact nature of the medical event which caused Parsons to lose consciousness. This court does not regard it as speculative, however, to conclude that a health event caused Parsons to be sufficiently non-responsive at the wheel of a moving tractor that he was unable to be revived by the frantic efforts of his daughter. This is simply not a symptom which is exhibited by a healthy human being, and, once again, plaintiff has failed to offer this court even a theory as to what non-health related event could have caused Parsons to be in such a state. Under these circumstances, this court is unable to conclude that Parsons died as "the direct result of an accident and not related to any other cause," since it seems clear that a medical event at least "contributed" to his death within the meaning of the accidental death policy. Defendant's decision to deny plaintiff accidental health benefits must therefore be upheld, and its motion for summary judgment will therefore be granted.

It is therefore ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

SO ORDERED, this the 16th day of October, 2019.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**